NORTH AMERICAN SAVINGS ASSOCIATION, Plaintiff–Appellee,

v.

METROPLEX DEVELOPMENT PARTNERSHIP, et al.,
Defendants,

and

Edward P. Rea, Defendant–Appellant.

No. 89–1887.

United States Court of Appeals,
Fifth Circuit.

May 28, 1991.

Richard Jackson, Tresi Moore Freemyer, Richard Jackson & Assoc., Dallas, Tex., for Rea.

Martha J. Hardwick, Christopher H. Rentzel, Bauer, Rentzel, Millard & Hardwick, Dallas, Tex., for North American Sav.

Before GOLDBERG, JOLLY and WIENER, Circuit Judges.

PER CURIAM:

In this Texas diversity case plaintiff-appellee North American Savings Association (North American) sued now-defunct corporations and their purported distributees, including defendant-appellant Edward P. Rea, for interest accrued on a nonrecourse promissory note, such interest having been guaranteed by a partnership composed of three of the defunct corporations. The district court granted North American's motion for summary judgment against the defendants, including Rea. As the only appellant still before this court,[1] Rea appeals the district court's summary judgment rendered against him, claiming that the district court misconstrued Texas' statutory version of the equitable doctrine of Corporate Trust Fund (Trust Fund Doctrine). In this appeal we also consider North American's claim that Rea's notice of appeal was not timely filed.

We find that Rea's notice of appeal was timely filed pursuant to Fed.R.App.P. 4(a)(3). Reviewing the district court's interpretation of state law de novo and with-

---

**1.** Pursuant to Local Rule 42.3, the appeals were dismissed for want of prosecution for failure of all appellants, except Rea, to file briefs within the time fixed by the rules.

out deference,[2] we find that the district court erred in granting summary judgment against Rea under the Trust Fund Doctrine, and therefore reverse that judgment and remand.

## I.

## BACKGROUND

On February 13, 1984, Triland Investment Group (Triland), a Texas general partnership composed of three Texas corporations, Realtron Holdings, Inc. (Realtron Holdings), Stylus Holdings, Inc. (Stylus Holdings), and Jenncorp International, Inc. (Jenncorp International), executed a nonrecourse promissory note for $19,750,000 (the note) in favor of North American. Under the terms of the note, interest was payable on a monthly basis while principal plus all accrued but unpaid interest was due and payable on or before February 1, 1985. A year after the loan was made, the due date of the note was extended to February 1, 1986. The note was secured by a deed of trust encumbering certain real property in Dallas County, Texas.

At the time the note was executed, another Texas general partnership, Metroplex Development Partnership (Metroplex), composed of three other Texas corporations, Realtron Corporation (Realtron), Stylus Corporation (Stylus), and Bright Hill Development Company (Bright Hill), entered into an agreement (the guaranty agreement) guaranteeing payment of any accrued interest on the note in the event of Triland's default. The guaranty agreement was signed on behalf of the three corporate partners of Metroplex by their respective presidents, Rea, Nicholas R. DiGiuseppe, and John Zouzelka.

After, Triland defaulted, North American demanded payment of interest from Metroplex as guarantor under the guaranty agreement, but Metroplex refused to pay. On April 29, 1986, North American sued Metroplex, Realtron, Stylus, and Bright Hill.[3] For months thereafter, the Triland partners made repeated attempts to tender fee simple title of the property held as collateral under the note, but North American refused to accept the tender.

In December, 1986, Realtron, Stylus, and Bright Hill filed articles of dissolution. Each of the articles contained standard "boilerplate" language stating that (1) "all debts, obligations and liabilities of the corporation have been paid or discharged or adequate provision has been made therefor," and (2) "adequate provision has been made for the satisfaction of any judgment, order or decree which may be entered against [the corporation] in any pending suit." Each of the articles of dissolution also stated that all remaining property and assets of the corporation had been distributed to its sole shareholder. The sole shareholder of Realtron was Realtron Holdings; the sole shareholder of Stylus was Stylus Holdings; and the sole shareholder of Bright Hill was Jenncorp International.

Two days later, each of the sole shareholder corporations filed its own articles of dissolution, containing essentially identical boilerplate provisions regarding the debts of the corporation and the distribution of assets. Appellant Rea was the sole shareholder of Realtron Holdings; former appellant DiGiuseppe was the sole shareholder of Stylus Holdings; and former appellant Zouzelka was the sole shareholder of Jenncorp International.

## II.

## PROCEDURAL HISTORY

North American sued Metroplex and its individual corporate partners on April 26, 1986, to recover on the guaranty agreement which secured the interest payment obligation under the note. On January 5, 1987, North American moved for summary judgment. Because in December of 1986 the corporate defendants and their corpo-

---

**2.** *See Salve Regina College v. Russell,* ——— U.S. ———, ———, 111 S.Ct. 1217, 1224, 113 L.Ed.2d 190 (1991).

**3.** Triland was not made a defendant despite being the maker of the note because that partnership had no personal liability under the nonrecourse note.

rate shareholders had filed notices of intent to dissolve, North American filed a motion on April 30, 1987, to join the individual defendants—the sole shareholders of the corporations which in turn had been the sole shareholders of the corporate partners of Metroplex—as parties to the action. At the same time, North American moved to join D/FW Development Company, Ltd. (D/FW).[4] On May 29, 1987, the district court granted this motion joining Rea, DiGiuseppe, Zouzelka, and D/FW as defendants. North American then filed its first amended complaint, claiming that these individual parties were liable for the accrued interest under the guaranty agreement.

In response to North American's January 5, 1987 motion for summary judgment, the district court granted judgment against the corporate defendants, Metroplex, Realtron, Stylus, and Bright Hill. Because the individual defendants and D/FW were added after the motion was filed, the court did not rule on their personal liability at that time.

In a separate action, Triland sued North American for breaching the guaranty agreement claiming that North American had failed to satisfy certain conditions precedent contained in that contract. Triland also sought a declaratory judgment relieving it of all obligations under the agreement because of North American's refusal to accept tender of the deed. The new action was consolidated with the original one in May of 1988, and on June 9, 1989, the court realigned Triland as a defendant-counterplaintiff.

Thereafter, North American filed an amended motion for summary judgment against Rea, DiGiuseppe, Zouzelka, and D/FW. The court granted that motion on July 29, 1988 and rendered judgment accordingly. North American then filed a third motion for summary judgment, contending that the counterclaims asserted by Triland in the consolidated action had been determined previously and claiming relief against all the defendant-guarantors under various alternative theories of law, none of which is pertinent to the issues on appeal.

On July 10, 1989, the district court granted North American's summary judgment motion against Triland but denied relief on its other claims, holding that the record presented fact questions not subject to summary disposition. The district court also held that Realtron Holdings, Stylus Holdings, and Jenncorp International, which had been newly aligned as defendants in the action, were liable on the note even though they had not been included in the July 29, 1988 summary judgment order.

On August 23, 1989, the court entered its final judgment against the corporate and individual defendants, holding them jointly and severally liable to North American for interest on the note in the amount of $7,317,194.60. The court also dismissed with prejudice all of Triland's claims against North American and dismissed without prejudice North American's remaining claims against the defendants.

The same attorney represented all parties in this litigation who were adverse to North American. On September 22, 1989, he filed a timely notice of appeal on behalf of the corporate and partnership defendants, Triland, Metroplex, Realtron, Stylus, Bright Hill, Realtron Holdings, Stylus Holdings, Jenncorp International, and D/FW Development Company. On September 27, 1989, that attorney contacted counsel for North American by telephone seeking consent for the filing of an amended notice of appeal to add the individual defendants who had been omitted from the original notice of appeal, apparently through inadvertence. Counsel for North American refused.

Not to be dissuaded, the attorney for the defendants filed a notice of appeal pursuant to Rule 4(a)(3) of the Federal Rules of Appellate Procedure on behalf of Rea, DiGiuseppe, and Zouzelka on September 28, 1989. In response, North American filed a motion to dismiss the individual defendants' appeal as being untimely. By order

---

**4.** North American had received word that, after Realtron, Stylus, and Bright Hill filed their articles of dissolution in December of 1986, D/FW had assumed, been assigned, or had transferred to it all assets and liabilities of Realtron, Stylus, and Bright Hill.

of this court, North American's motion was carried forward. On June 28, 1990, a panel of this court dismissed the appeals of all the defendants except Rea for want of prosecution based on their failure to file appellate briefs within the time fixed by the rules. The timeliness of Rea's notice of appeal remains to be decided here.

### III.

### DISCUSSION

*A. Timeliness of Rea's Notice of Appeal*

■ Rea filed his notice of appeal 36 days after entry of the district court's final judgment, but only eight days after the corporate and partnership appellants filed their notice of appeal. Under Rule 4(a)(1) of the Federal Rules of Appellate Procedure, a notice of appeal must be filed within 30 days after entry of final judgment. Obviously, Rea's notice did not meet this requirement. Nonetheless, Rea insists, his notice is timely under Rule 4(a)(3), which provides:

> If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

Fed.R.App.P. 4(a)(3). North American counters that Rea cannot rely on this provision because to do so would conflict with the rule's underlying purpose.[5]

Under the previous version of Rule 4, all parties had to appeal within the same time period. Therefore, a party who was satisfied with a final judgment and did not wish to challenge the decision unless another party did so first had a classic Hobson's Choice: either file a protective appeal or keep watch at the clerk's office to make sure there was sufficient time left within which to file a notice in the event another party chose to appeal. *See Jackson Jordan, Inc v. Plasser Am. Corp.*, 725 F.2d 1373, 1375 (Fed.Cir.1984) (quoting 9 J.

Moore & B. Ward, *Moore's Federal Practice* § 204.11[1] (2d ed. Supp.1980)). To eliminate that dilemma, Rule 4(a)(3) was amended to allow a party a period of at least fourteen days in which to file a notice after the filing of the initial appeal by another party. That amendment eliminated that need for protective appeals and wasteful vigils in the clerk's office. This court has held that the fourteen-day period applies to other appellants. *Jackson Jordan*, 725 F.2d at 1375.

The present case clearly does not fit the situation for which Rule 4(a)(3) was amended: Rea obviously did not become dissatisfied with the district court's summary judgment award only after the corporate defendants filed their notice of appeal. Indeed, all of the defendants were represented by the same attorney and all had related if not identical interests. Furthermore, Rea's attorney does not deny that the true reason for filing the delayed appeal for the individual appellants was to cure the effects of his own unintentional omissions.

Thus, according to North American, allowing Rea to take advantage of the extra fourteen days would invite subterfuge and reward otherwise inexcusable neglect or dishonesty. North American simply argues that although Rea's notice might comply with the literal requirements of Rule 4(a)(3), it nevertheless violates the spirit of that rule.

North American's motion to dismiss Rea's appeal lacks merit. It attempts to limit the applicability of Rule 4(a)(3) by suggesting that the Rule should only apply when a party would not appeal unless some other party appeals first. North American would thus have this court engraft an implied condition onto the salutary effect of Rule 4(a)(3) and ignore its plain and unambiguous wording. "As with any case involving statutory interpretation, 'we state once again the obvious when we note that, in determining the scope of a statute, one is to look first at its language.'" *North Dakota v. United States*, 460 U.S. 300, 312,

---

**5.** North American also argues that it would have been improper for Rea to have filed an amended notice or a motion for extension of time. Because Rea did neither, these arguments are superfluous.

103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983) (quoting *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983)).

## B. Standard of Review

This court reviews the grant of a summary judgment motion de novo, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir. 1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 873 (5th Cir. 1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

## C. Corporate Trust Fund Doctrine

In its summary judgment motion, North American succeeded in convincing the district court to hold Rea and the other individual defendants personally liable under the guaranty agreement on the basis of the Trust Fund Doctrine, as embodied in article 7.12 of the Texas Business Corporation Act. At the time this action was filed,[6] article 7.12 provided in pertinent part:

Survival of Remedy after Dissolution

A. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this Act, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its officers, directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within three years after the date of such dissolution.

Tex.Bus.Corp.Act Ann. art. 7.12 (Vernon 1980). In *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547 (Tex.1981), the Texas Supreme Court determined that the above quoted survival statute codified the rule from equity jurisprudence which permitted creditors of a dissolved corporation to pursue assets distributed to shareholders "so long as the assets [were] traceable and [had] not been acquired by a bona fide purchaser." *Id.* at 550. In effect, the Trust Fund Doctrine burdened assets received by shareholders with an equitable lien to secure any predissolution claims.

Rea argues that the district court erred in granting summary judgment under the Trust Fund Doctrine because North American failed to prove that Rea received any assets whatsoever from Realtron or Realtron Holdings. That failure, Rea insists, caused the court to commit error in failing to limit his liability to corporate assets, if any, he actually received upon dissolution. Rea relies on the Texas Supreme Court's decision in *Henry I. Siegel Co. v. Holliday,* 663 S.W.2d 824 (Tex.1984). In that case, Siegel attempted to collect over $2000 owed by Holly Gram, Inc., on an unpaid trade account by holding Edna Holliday, an *officer* of the defunct corporation, personally liable under the Trust Fund Doctrine. The evidence demonstrated, however, that Holliday paid more money in discharge of the debts of the corporation than the aggregate value of all assets owned by the corpo-

---

6. Article 7.12 of the Texas Business Corporation Act was extensively amended in 1989. *See* Tex. Bus.Corp.Act Ann. art. 7.12 (Vernon Supp.1991).

ration at the time of its dissolution. The corporate assets were worth about $20,000. Holliday received assets with a value of $10,000, but she paid a total of $26,000 to various creditors of the corporation.

The Texas Supreme Court held that Holliday had no liability because the Trust Fund Doctrine only allowed creditors of the corporation to follow corporate assets and because officers and directors of a dissolved corporation could not be held personally liable to the corporation's creditors in amounts greater than the value of the assets actually received by those officers and directors. This rule applied even when the officers and directors were found personally liable for breach of their duty to creditors as the distributees of the corporation. Thus, Siegel's cause of action under the Trust Fund Doctrine failed because it made no effort to trace Holly Gram's assets.

In like manner Rea argues that North American failed to introduce competent evidence to prove that he received any assets from the defunct corporations and that, at the very least, North American failed to show that there was no genuine issue as to any material fact.

To support its summary judgment motion, North American relied exclusively on the articles of dissolution of Realtron and Realtron Holdings. Both articles stated that (1) all assets of the corporation had been distributed to the sole shareholder, (2) other arrangements had been made for the satisfaction of any future judgment entered in a pending lawsuit, and (3) all assets had been distributed to the corporation's sole shareholder. Thus, argues North American, *Siegel* does not control the outcome of the instant case because, by virtue of the representations in the articles of dissolution, it is a matter of public

record that the value of the assets owned by Realtron and Realtron Holdings was sufficient to satisfy the corporations' indebtednesses including those for the accrued interest payments under the note. According to North American, Rea's own public admission satisfies the Trust Fund Doctrine's requirement that his personal liability not exceed the value of corporate assets he received. By implication, North American seems to argue that Rea individually is estopped by his official acts on behalf of the corporation in executing the articles of dissolution.

In response, Rea contends that the articles of dissolution merely indicated that the sole shareholder would receive the assets of the corporation, *if* any remained for distribution. Rea also produced an affidavit from DiGiuseppe stating that "[u]pon the dissolution of Realtron Corporation, Stylus Corporation and Bright Hill Development Company, no assets, cash or anything of value belonging to those corporations was ever received by Nicholas R. DiGiuseppe, John C. Zouzelka or Edward P. Rea."[7]

■ We agree with Rea. The Trust Fund Doctrine, whether dealing with officers and directors on one hand or shareholders on the other, simply cannot function in the absence of some evidence of the value or identity of assets received from the corporation by the officer, the director, or the shareholder in question. The instant case was strictly decided under the equitable principles of the Trust Fund Doctrine as now codified in the Texas Business Corporation Act. Although, under the cases, it appears that an *officer* or *director* who receives corporate assets in dissolution might have in personam liability to creditors, it is clear that such personal liability is "capped" by the value of the corporate

7. North American insists that this affidavit is misleading because Rea, not being the sole shareholder of Realtron, could not have received anything of value upon the dissolution of that corporation as a matter of law. (Rea was the sole shareholder of Realtron Holdings, which, in turn, was Realtron's sole shareholder.) But Rea correctly contends that the affidavit testimony is broad enough to encompass any

distribution of assets from Realtron, whether direct or indirect.

Additionally, North American maintains that the affidavit is inadmissible under the parol evidence rule. This objection was not raised before the district court and therefore should not be considered on appeal. *McLean v. International Harvester Co.,* 902 F.2d 372, 374 (5th Cir.1990).

assets received by the officer or director. By contrast, a *shareholder* who receives assets from a corporation in dissolution does so as a true constructive trustee for the benefit of the creditors of the corporation and has only in rem liability under the statute and the cases, subject to traceability into the hands of third parties.[8] Consequently, whether creditors seek recovery under the Trust Fund Doctrine from officers, directors, or shareholders, an indispensable element of the creditor's case is proof of the value or identity of the corporate assets received by the officer, director, or shareholder.

■ Additionally, the so-called fiduciary aspect of the Trust Fund Doctrine as interpreted by the Texas courts in *Siegel* and its progeny is distinguishable from the general fiduciary obligation of officers and directors under the equity jurisprudence and the corporate statutes. In the instant case the court clearly held Rea liable under the Trust Fund Doctrine. Although Rea executed articles of dissolution containing a statement that "adequate provisions have been made for payment of all debts and judgments" and another statement that "all remaining assets have been transferred to the stockholders," those statements are separate and distinct. It is noteworthy that none of those statements represent that sufficient *assets* have been held to pay creditors and judgments, only that adequate *provisions* have been made. It is equally noteworthy that the latter statement gives no indication of values or identification of assets, or for that matter, that there were in fact any assets transferred.

North American made a fatal mistake in failing to include some kind of summary judgment evidence of a value or description of the assets purportedly transferred to Rea. The Trust Fund Doctrine, whether employed to recover from officers and directors or from shareholders, absolutely requires a value or an identification of distributed assets. The corporate articles of dissolution simply cannot be "boot-strapped" to transform their separate statements regarding transfers to a shareholder and arrangements for debts into a binding declaration that a shareholder has received assets of a value sufficient to pay debts. Only if the articles of dissolution had contained lists of assets or statements of value could their execution by Rea have estopped him from denying that he had received assets.

■ North American's argument that Rea failed to present anything but conclusory statements that he did not receive assets from Realtron Holdings upon its dissolution, insisting that he could have substantiated these conclusions merely by elaborating on the financial condition of Realtron and Realtron Holdings at the time of their respective dissolutions, is unavailing because it was not Rea's burden to do so. North American had the burden of tracing the assets of the debtor corporations yet it made no effort to meet that burden. Accordingly, summary judgment in its favor was improper. It was error for the district court to hold Rea liable for the full amount of unpaid interest on the note in the absence of a specific determination of the aggregate value of assets, if any, distributed to Rea as the sole shareholder of Realtron Holdings, including any traceable assets that may have been distributed first from Realtron to Realtron Holdings.

North American asserts, however, that the district court found Rea liable for accrued interest on the note under two completely separate claims, the first being a claim on the basis of the Trust Fund Doctrine, and the second being a claim for accrued interest on the basis of the guaranty agreement. Under this second theory, North American asserts, Rea and the other individual defendants are liable on the guaranty agreement because of their sworn recitations and actions with regard to the dissolving corporations. We disagree. There is no indication that the district court found Rea primarily liable on the guaranty agreement. Thus, whether

---

**8.** Presumably a sale to a bona fide third party purchaser (exception to the tracing) could convert a shareholder's in rem liability to in personam liability capped, however, at value of the property transferred; but that issue is not before us.

the district court erred in awarding interest is solely dependent on finding Rea responsible under the Trust Fund Doctrine for obligations of the dissolved corporation, Realtron, which by virtue of its membership in Metroplex, was a guarantor of interest. Accordingly, we find that the district court erred in granting summary judgment against Rea.

### D. Interest

Rea complains that the district court erred in holding him liable for post-dissolution interest because article 7.12 expressly restricts the use of the trust fund theory to predissolution claims. It is clear, however, that because this action was pending at the time the corporations were dissolved, North American's claim is one for predissolution interest and not a claim prohibited by the statute.

## IV.

### CONCLUSION

For the foregoing reasons, North American's motion to dismiss Rea's appeal as being untimely is DENIED, and the district court's summary judgment against Rea is REVERSED and this case is REMANDED for further consistent proceedings.