Isaac LEE, et al., Plaintiffs–Appellants, Cross–Appellees,

v.

COAHOMA COUNTY, MISSISSIPPI, et al., Defendants–Appellees Cross–Appellants.

No. 90–1122.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1991.

Charles E. Webster, A. Jane Heidelberg, Clarksdale, Miss., for plaintiffs-appellants, cross-appellees.

Susan D. Fahey, Armin J. Moeller, Jr., Jackson, Miss., for defendants-appellees, cross-appellants.

Before CLARK, Chief Judge,
RONEY * and DUHÉ, Circuit Judges.

CLARK, Chief Judge:

### I.

Isaac Lee, Sammy Flowers, Dudley Lester, Randy Stewart, Danny Hill, Floyd Williams and David Rybolt seek to appeal the district court's award of compensatory damages pursuant to § 7(k) of the Fair Labor Standards Act (FLSA). They also would contest the district court's award of attorney's fees. Coahoma County cross appeals from the district court's award of attorney's fees. We conclude that this court possesses jurisdiction over the appeals of the deputies, and we affirm in part, reverse in part, vacate the district court's order granting attorney's fees and remand for further proceedings.

### II.

All appellants in this case were employed by the Coahoma County Sheriff's Department as deputies. After the Supreme Court's decision in *Garcia v. San Antonio Metro Trans. Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), established that local governments were employers under the FLSA, the County concluded that the then existing method of calculating deputies' compensation violated the FLSA. The County's counsel, after attending a seminar on the FLSA, devised a compensation plan to take advantage of the § 7(k) exemption to the FLSA. The plan involved changing the deputies' compensation from a salary base to a wage basis and adjusting the hourly rate to be paid to each employee. This plan allowed the County to pay the deputies substantially the same compensation as before. Sheriff Bonner estimated that each deputy worked approximately 245 hours per month with 171 hours of straight time and 74 hours of overtime. Each month, Sheriff Bonner would turn in time sheets indicating that each employee had worked 171 hours and 74 hours overtime. The Sheriff kept no records detailing the actual hours each deputy worked. It was admitted that the hours shown in the time sheets bore no relation to the true number of hours worked. The Sheriff informed some of the deputies that their pay scale was being altered. He testified that he did not know that the FLSA required accurate records be kept. The chancery clerk testified that he knew the FLSA required overtime be computed on interval of 28 days or less, but paid the deputies on a monthly basis because his computer calculated wages in intervals of one month.

The deputies filed suit against Sheriff Bonner and Coahoma County (collectively the "County") for back wages for overtime and liquidated damages under the FLSA. The County admitted miscalculation of overtime and tendered payment to the deputies. The deputies refused the tender and disputed the amounts owed. At a bench trial, the district court awarded the deputies amounts close to the County's calculations, denied the liquidated damages claim and awarded attorney's fees of $4800.00.

### III.

The deputies claim the district court erred in calculating their overtime pay, improperly denied liquidated damages under 29 U.S.C. § 260, and awarded inadequate attorney's fees. The County asserts the district court abused its discretion in allowing all deputies except Isaac Lee to file an amended notice of appeal. The County also contends that the deputies are not entitled to recover attorney's fees.

### A. *Notice of Appeal.*

■ Twenty-eight days after the court entered its final judgment a notice of appeal was timely filed. However, this notice of appeal listed only deputy Isaac Lee by name and used the term "et al." It did not name the other six deputies. Shortly after filing this notice of appeal, the deputies' counsel became aware of the Supreme

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

Court's holding in *Torres v. Oakland Sca-venger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), interpreting FED.R. APP.P. 3(c) to require that each appellant be listed by name in the notice of appeal. After the thirty day period allowed by FED. R.APP.P. 4(a)(1) for filing a notice of appeal had expired, the deputies moved for an extension of time to file a notice of appeal pursuant to FED.R.APP.P. 4(a)(5) and subsequently mailed an amended notice of appeal to the district court. They claimed that the failure to list all the appellants in the original notice of appeal was due to excusable neglect. The district court granted their motion *ex parte* and designated the amended notice of appeal listing all seven appellants as filed pursuant to that order.

The County asserts that under *Torres* and the cases in this circuit which follow *Torres*, the original notice of appeal was insufficient to confer jurisdiction over any of the appellants except Isaac Lee. *See Barnett v. Petro–Tex Chemical Corp.*, 893 F.2d 800 (5th Cir.1990); *Smith v. White*, 857 F.2d 1042, 1043 (5th Cir.1989). Further, the County asserts that the district court abused its discretion in extending the time allowed for filing a notice of appeal because of excusable neglect, *see Allied Steel v. City of Abilene*, 909 F.2d 139, 142 (5th Cir.1990), and by doing so *ex parte* when notice is expressly required under FED.R.APP.P. 4(a)(5).

The deputies admit the original notice of appeal was insufficient to perfect an appeal as to any plaintiff except Isaac Lee, but assert their motion to amend the notice of appeal at the outset of the appellate process distinguish *Torres*. They point to language in *Torres* which indicates the Court's decision might have been different had the petitioner Torres sought to amend the notice of appeal. *See Torres*, 108 S.Ct. at 2405. Because the deputies corrected notice of appeal filed under the extension provisions of Rule 4(a)(5) complied with the requirements of Rule 4(a)(3), we agree.

Within the time allowed by FED.R.APP.P. 4(a)(3), the defendants filed a Notice of Cross Appeal from the orders granting attorneys fees to the plaintiffs. Assuming that the effect of *Torres* on the initial notice of appeal was to perfect an appeal only as to the plaintiff Isaac Lee, then the defendants' notice of cross appeal would become the "first notice of appeal" under Rule 4(a)(3) as to all other plaintiffs. *See In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1364 (9th Cir.1987). Accordingly, Rule 4(a)(3) granted all plaintiffs 14 days from this initial timely notice of appeal by defendants to file their own notice with the court. Plaintiffs' amended notice of appeal filed two days after the defendants' notice of cross appeal is well within the time allowed by FED.R.APP.P. 4(a)(3). As a result, the plaintiffs not listed in the original plaintiffs' notice of appeal have filed a timely notice of appeal and need not justify their conduct under the excusable neglect standard of Rule 4(a)(5).

■ This holding comports with Rule 4(a)(3)'s purpose to allow all parties an opportunity to see and respond to the actions of their adversaries. 9 J. Moore and B. Ward, *Moore's Federal Practice* § 204.11[1] (2d ed. Supp.1980). While the plaintiffs in this case would be taking advantage of this rule to remedy their own miscalculations rather than as a matter of strategy, appellants in another circumstance might legitimately decide to let one of their co-appellants proceed alone on appeal unless the appellee decided to file a cross appeal. *See North American Savings Ass'n v. Metroplex Development Partnership*, 931 F.2d 1073 (5th Cir.1991). If Rule 4(a)(3) did not authorize the amended notice of appeal here, then an appellee could wait until the last possible day to file a cross appeal thereby preventing any challenge by other, as yet uninvolved, parties. Giving effect to the plaintiffs' amended notice of appeal under Rule 4(a)(3) in the circumstances of the present action does not distort the operation of the time limits for filing a notice of appeal under Rule 4. We do not reach or rule on the multiparty case in which limited appeals and cross appeals might leap-frog one another to expand the time for all parties to appeal for an unreasonable period.

## B. Overtime Calculations.

The deputies claim that the district court made three errors in calculating the overtime pay due them under § 7(k) of the FLSA. They claim that the district court erred in calculating their pay on a weekly basis rather than using a 28–day work period, that the district court erred in concluding their meal breaks and three hour rest periods on long weekend shifts were not compensable.

■ We will not disturb the district court's fact findings unless they are clearly erroneous. However, we review the district court's application of the FLSA *de novo*.

■ Section 7(k) of the FLSA creates an exception to the standard wage and hour provisions of the FLSA.[1] It provides special compensation rules for public law enforcement and fire protection departments. Section 7(k) contains two structural concepts not found elsewhere in the FLSA: the "tour of duty" and the "work period." A tour of duty means a shift or "period of time during which an employee is considered to be on duty." 29 C.F.R. § 553.220. A work period "refers to any established and regularly recurring period of work which, under the terms of the [FLSA], cannot be less than 7 consecutive days nor more than 28 consecutive days." 29 C.F.R. § 553.224. Both the tour of duty and the work period impact the determination of compensable hours and overtime compensation under § 7(k) of the FLSA.

Under § 7(k)(1)(B), the Secretary of the Department of Labor has determined that the average number of hours worked by law enforcement employees in a 28 day period is 171. 29 C.F.R. § 553.230. Thus a law enforcement employee receives a regular wage for the number of hours worked in a particular work period that bears the same relationship to 171 as the number of days in the work period bears to 28. Such an employee is not entitled to overtime pay until the "number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28." 29 C.F.R. § 553.230. For example, if the work period is 28 days then a law enforcement officer receives a regular wage for the first 171 worked in the work period and overtime pay for all hours worked in excess of 171. Likewise, if the work period is 7 days then the officer receives regular pay for the first 43 hours worked in the work period and overtime pay for all hours worked above 43. *Id.*

■ The deputies correctly claim that the district court erred in determining their overtime pay on a weekly wage basis rather than using the work period method set out above. In calculating the deputies' overtime pay the district court relied on 29 C.F.R. § 778.113(b) which requires set salaries covering more than a work week to be reduced to a work week equivalent. Consequently the district court calculated the deputies' overtime on a weekly wage basis. However, when Section 778 is used to calculate a § 7(k) employee's regular wage rate, the work period concept is substituted for the term work week. 29 C.F.R. § 553.233. The district court's opinion makes no finding about the appropriate

---

1. Section 7(k) states:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—
(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
compensation at a rate not less than one and one-half times the regular rate at which he is employed.

work period in this case. The deputies claim that the appropriate work period should be 28 days since each of the deputies was assigned to a 28–day rotating schedule. The County responds that the district court's calculations are equivalent to a finding of a 7–day work period. While a 7–day work period ultimately may be found to be proper on remand, we are unable to discern this from the court's opinion or the record. We are also unable to tell whether the district court calculated the overtime pay according to the ratio set out in 29 C.F.R. § 553.230 or simply used a 40–hour work week as a guide. Since overtime calculations under § 7(k) are tied to a specific number of hours worked in a given work period, a determination of the work period is an essential step in determining the overtime pay due an employee. The district court must make this determination in the first instance.[2]

■ The deputies also claim that the district court erred in concluding that their meal breaks were not compensable. They point out that § 7(k) requires a law enforcement employee to be completely relieved from duty during the meal period in order to exclude the meal period from the hours worked. Title 29 C.F.R. § 553.223 so provides. The meal period must be scheduled, occur at a regular time, and normally be thirty minutes or more. 29 C.F.R. § 785.19. The deputies argue that since their meal periods were on a "catch as catch can" basis and they were often required to cut their meal periods short and could be called back to duty at any time, the twenty minute meal periods were compensable. The district court found that the deputies' twenty minute meal breaks were bona fide meal periods and were not compensable time under § 7(k) of the FLSA because the deputies were allowed to go where they pleased during the break, would only radio out once they reached the

place where they wished to eat and were called back only in an occasional emergency.

Section 553.223 of Title 29 C.F.R. provides an example of the time of meal break intended to be compensable under § 7(k) of the FLSA:

> [W]here law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g. 'stakeouts'), they are not considered to be completely relieved from duty and any such meal periods would be compensable.

The meal breaks of the Coahoma County deputies in no way resemble this example. It is not dispositive that the deputies could be called if an emergency arose and this contingency does not mean they remained on duty. Nor does the fact that their meal breaks were often shorter than thirty minutes make the breaks compensable. Since the deputies did not log off until they had arrived at their chosen eating place (and were therefor compensated for traveling to their destination), the usual thirty minute threshold is inapplicable. *See* 29 C.F.R. § 785.19. These findings support the district court's fact conclusion that the meal periods are not compensable.

■ The deputies likewise claim that the district court erred in concluding that the rest breaks on the weekend long-shifts were not compensable. On weekends, several deputies would be required to work long shifts. The deputies would check in at 9:00 a.m. and would work until midnight. Since the shift was long, the deputies would be allowed a two hour rest break following the meal period. The deputies would usually return home and rest during the two hour break. The deputies argue that such rest breaks are required to be compensated under § 7(k) of the FLSA. They are correct.

2. In determining each deputy's hourly wage in a given work period, the district court should multiply the deputy's monthly salary by twelve to get a yearly salary, including a two week paid vacation to which each deputy is entitled. The district court should then divide the yearly salary by the number of work periods in a year.

The court should then divide the sum by the number of regular hours which may be worked in that work period according to the ratio set out in 29 C.F.R. § 553.230. This will result in a determination of each deputy's appropriate hourly wage in the work period determined by the district court.

Section 553.222(b) of Title 29 C.F.R. provides: "Where an employer has elected to use the section 7(k) exemption, sleep time *cannot* be excluded from the compensable hours of work where (1) The employee is on a tour of duty of less than 24 hours ..." (emphasis added). The weekend long-shifts in this case constitute tours of duty of less than 24 hours and the rest breaks at issue are clearly contemplated by the regulation. The district court concluded that because the deputies could go where they pleased during the rest periods they were not entitled to compensation for that time. However, unlike the meal break analysis above, the regulations set out a firm rule. Patrolling law enforcement officials such as deputies naturally have freedom of movement. The fact that the deputies could rest where they chose cannot defeat the precise wording of the regulation. As a result, this time should be included in calculating both overtime hours and hours worked for purposes of determining the appropriate hourly wage.

### C. *Liquidated Damages.*

The deputies claim that the district court erred in not awarding liquidated damages for the County's failure to comply with the overtime requirements of the FLSA. Their argument is two tiered. First, they claim that the district court erred in not ruling that Sheriff was an "employer" within the meaning of the FLSA. Second, the deputies argue that the district court should have found the Sheriff's actions denying overtime pay warranted liquidated damages under the FLSA. While the Sheriff was the deputies' employer under the FLSA, the district court did not abuse its discretion in refusing to award liquidated damages.

An employer under the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term employer includes individuals with managerial responsibilities and "substantial control over the terms and conditions of the [employee's] work...." *Falk v. Brennan,* 414 U.S. 190, 194, 94

S.Ct. 427, 430, 38 L.Ed.2d 406 (1973). If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA. *See Donovan v. Grim Hotel, Inc.,* 747 F.2d 966 (5th Cir.) *cert. denied,* 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985).

Sheriff Bonner clearly falls within the class of managerial personnel considered employers by the FLSA. Mississippi law allows a county sheriff operational control of the sheriff's department. Miss. Code Ann. § 19–25–13 (Supp.1989). A sheriff has the power to "appoint one or more deputies ..., remove them at pleasure, and to fix their compensation, subject to the budget of the sheriff's office...." Miss.Code Ann. § 19–25–19. The district court's opinion makes no finding concerning Sheriff Bonner's status as an employer under the FLSA. However, the absence of such findings does not affect the district court's discretionary refusal to award liquidated damages.

The FLSA provides for the payment of liquidated damages in an amount equal to the amount of compensatory damages. 29 U.S.C. § 216(b). Liquidated damages were originally mandatory any time a violation of the FLSA was found. However, in the Portal–to–Portal Act of 1947, Congress amended the FLSA to allow the district court discretion in awarding liquidated damages. 29 U.S.C. § 260. Section 260 provides:

> In any action ... to recover ... under the [FLSA], if the employer shows to the satisfaction of the court that such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation ... the Court may, in its discretion award no liquidated damages or award any amount thereof not to exceed the damages specified in Section 216 of [the FLSA].

This court has previously held that § 260 invests the district court with two levels of discretion. *Peters v. City of Shreveport,* 818 F.2d 1148 (5th Cir.1987). If the district court finds that employer's

action which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, it may choose not to award liquidated damages. *Id.* However, even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages. *Id.* The dual and specific findings of good faith and reasonable grounds have been interpreted strictly by this court. *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1262–63 (5th Cir.1986); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 466–67 (5th Cir.1979).

The County argues that this strict interpretation was impliedly overruled by the Supreme Court in *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1985) and *Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 113, 105 S.Ct. 613, 617–18, 83 L.Ed.2d 523 (1985). This assertion is incorrect. *McLaughlin* and *Thurston* dealt with the meaning of the term "willful" as it is used in the FLSA and related statutes. This term relates to the statute of limitations provisions which are not at issue in this case. As the Seventh Circuit explained in *Walton v. United Consumers Club, Inc.,* 786 F.2d 303 (7th Cir.1986), "[t]he *Thurston* standard does not apply to the doubling of damages under the FLSA ... because [§ 260] does not use the word 'willful' and puts the burden on the defendant." *Id.* at 311. Nevertheless, even the stringent requirements of § 260 do not deprive the district courts of its broad discretion to determine that an award of liquidated damages is not proper in a particular case.

The district court here listed several factors which contributed to the findings of good faith and reasonable grounds. The County sought the advice of its counsel in structuring a compensation plan which complied with the FLSA. After attending a seminar on the FLSA, the County's counsel and the chancery clerk devised a plan and consulted with the Department of Labor about its acceptability. The County relayed this plan to the Sheriff who did not

implement it correctly. The only fact to which the deputies point that casts doubt on the district court's findings is the Sheriff's failure to keep records that would disclose the deputies' actual work times. This fact alone is not dispositive since radio logs were kept from which their work times could be discerned and work schedules were regularly posted and kept. The FLSA does not dictate that an employer keep their records in any particular form. The district court did not abuse its discretion in refusing to award liquidated damages.

### D. Attorney's Fees.

The deputies claim that the district court's award of attorney's fees is inadequate, based on faulty methodology and constitutes an abuse of discretion. The County claims that, in light of the fact that the deputies recovered only approximately $400.00 more after a full bench trial than was offered in settlement negotiations, the district court abused its discretion in awarding any fees at all. We conclude that the deputies are entitled to attorney's fees and the issue must be remanded to the district court for further findings.

The FLSA authorizes the award of attorney's fees to a successful employee. 29 U.S.C. § 216(b). Section 216(b) provides in pertinent part: "The Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and the cost of the action." The County argues that because the deputies received only slightly more in awards as was offered in settlement they are not entitled to fees under § 216(b). However, § 216(b) makes no reference to the size of the recovery. The district court properly ruled that the deputies were the prevailing parties. Our conclusion that the deputies are entitled to further compensation for the rest periods during the long shifts reinforces this conclusion.

All deputies originally requested $40,000.00 in fees. The district court awarded a lump sum of $4,800.00 for all deputies. In discounting the requested fees, the dis-

trict court summarized the factors this court set out in *Halferty v. Pulse Drug Co.*, 821 F.2d 261 (5th Cir.1987) and only briefly related them to the facts of this case. The court did not discuss the appropriate loadstar amount. We have no way of discerning from the district court's order how the specific award of fees was reached. While the amount the district court awarded may ultimately prove to be an appropriate award for all deputies, the order appealed from is simply too vague to permit review on this record.

### IV.

We conclude that the district court erred in determining the deputies' overtime pay on a weekly basis, erred in ruling that the deputies' rest breaks were not compensable, correctly determined that the deputies' meal breaks were not compensable, and did not abuse its discretion in refusing to award liquidated damages. We also conclude that the district court's order granting attorney's fees is insufficiently detailed to permit review. Accordingly, we AFFIRM in part, REVERSE in part, VACATE the district court's order granting attorney's fees, and REMAND the cause for further proceedings consistent with this opinion.