# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2022

Lyle W. Cayce
Clerk

No. 21-50301

Joel Hoenninger; Michael Kivitz; Hayden Hyde; Robert Romano; Samuel Caskey; Et Al,

*Plaintiffs—Appellees*,

*versus*

Leasing Enterprises, Limited, doing business as Perry's Restaurant, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:14-CV-798

Before Davis, Higginson, and Engelhardt, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:*

This is an appeal of an award of attorney's fees stemming from a collective action brought in the United States District Court for the Western District of Texas under the Fair Labor Standards Act. The underlying

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

dispute centers around a payment scheme developed by employer Leasing Enterprises, d/b/a Perry's Restaurant (hereinafter "Perry's"), for compensating employees at Perry's Restaurant. *Id.* Perry's payment policy was found to violate the FLSA. The plaintiff employees sought attorney's fees, pursuant to the FLSA, and were granted an award of fees by the district court. On appeal, Perry's challenges the fee award recommended by the Magistrate Judge and adopted by the district court. We VACATE the district court's fee order and REMAND the case for a recalculation of the award.

## I.

In August 2014, 350 plaintiffs (hereinafter "Plaintiffs") brought a collective action against Perry's under the FLSA. Perry's is a restaurant company operating throughout Texas. Until the present litigation commenced, Perry's paid its servers' credit-card tips daily, instead of requiring them to wait for their bi-weekly paycheck.[1] To provide employees with the daily payments without keeping large volumes of cash on restaurant premises, Perry's had armored vehicles deliver cash to each of its restaurants three times per week. However, to offset the costs of the cash delivery services and credit card processing fees, Perry's "deducted 3.25% from its servers' credit-card tips before paying out those tips in cash." "That choice produced two FLSA cases challenging whether it was proper for Perry's to offset the cash-delivery costs."

The Magistrate Judge recounted the procedural history of the pertinent FLSA case as follows, which is largely undisputed on appeal:

> The case was originally filed on August 20, 2014. The original complaint noted that prior to this case being filed, "a lawsuit was filed in the Southern District of Texas [Houston]. . .

---

[1] Perry's discontinued its "credit card offset policy" roughly six weeks after a trial court concluded, in a related suit, that the policy violated the FLSA.

against the Defendant for the same practices alleged in this Complaint for the time period of December 15, 2010 through January 17, 2013." Perry's first response to the suit was a motion to dismiss, which Judge Yeakel denied on the recommendation of the undersigned. The Plaintiffs then moved forward, seeking conditional certification of the case as a collective action. At the same time, a final judgment was entered in the Houston case, which Perry's had appealed to the Fifth Circuit. Because the question on that appeal—whether a credit card tip fee was permitted by the FLSA—was also in question in this case, Perry's requested that the Court abate this case pending the Fifth Circuit's decision. The Plaintiffs were not opposed to a stay so long as they were permitted in the meantime to get notice to potential plaintiffs and it was clear that no plaintiff's period of potential recovery was shortened by virtue of the stay. After a hearing at which the parties presented their respective positions on a stay to Judge Yeakel, he directed the parties to prepare an order consistent with those discussions. The parties were unable to agree to an order, however, and filed a "motion for help" asking for further direction on the logistics of a stay and sending out notice. Another hearing ensued and further direction by the Court was given, and the parties were once again instructed to submit an order consistent with the discussions. Once again, the parties could not agree on that order, and ultimately, on August 27, 2015, Judge Yeakel entered his own order conditionally certifying the class, and abating the case pending the outcome of the appeal of the Houston litigation.

The Fifth Circuit released its opinion in the Houston case on June 14, 2016, and on June 16, 2016, Judge Yeakel ordered the parties to submit a joint status report. The parties were unable to agree on a joint report, and instead submitted opposing statements. After two ensuing status conferences, a new scheduling order was entered, setting a bench trial for the month of October 2017. The Plaintiffs filed a summary judgment motion on the issues of willfulness and good faith, which Judge Yeakel denied. The parties then filed pretrial materials, including, the week before trial, a stipulation on the

issues decided in the Houston case, and the bench trial took place on October 23, 2017. Judge Yeakel issued his Findings of Fact and Conclusions of Law on May 30, 2018, as noted above. After several months of discussions between the parties to apply the final legal conclusions to the various plaintiffs' circumstances, the parties filed a status report of their actions. A subsequent status report reflected that the parties intended to mediate the issue of attorney's fees, and requested that Judge Yeakel postpone entry of judgment until the mediation was completed. The mediation was unsuccessful, and after being notified of this, Judge Yeakel entered a final judgment on March 27, 2019.

The final judgment entered by the district court awarded a total of $640,234.48 to 170 plaintiffs and found 176 others were not eligible for relief based on when they were employed.

Following the final judgment order, Plaintiffs filed a motion seeking an award of attorney's fees and costs. Plaintiffs initially sought $759,479.15 for the "legal work performed by Steele Law Group PLLC and Sturm Law PLLC in prosecuting and resolving this case." However, Plaintiffs subsequently amended their motion "to correct calculation errors." Perry's responded to Plaintiffs' amended motion and Plaintiffs replied. Simultaneously, Plaintiffs filed a notice of appeal challenging the district court's findings in the final judgment order with respect to (1) "willfulness" and (2) "good faith." In response to the appeal, the district court dismissed Plaintiffs' original motion for fees without prejudice. Roughly one year later, this court affirmed the district court's final judgment order denying Plaintiffs' challenge to the two issues. Consequently, Plaintiffs re-urged their motion for fees, asserting they were not requesting any additional fees beyond those originally sought, and they would stand on their prior briefing.[2] Perry's

---

[2] According to the Magistrate Judge, "[i]t [would be] an understatement to say the billing records Plaintiff . . . . submitted with their fee application are 'confusing.'" "[T]he original document submitted—a 144-page spreadsheet in small font with minimal explanatory content—was not the correct attachment, and had to be replaced. . . . The

decided to rely on its prior briefing in response. At this point, the motion was referred to a Magistrate Judge for review and resolution.

On February 12, 2021, the Magistrate Judge issued a Report and Recommendation (hereinafter "R&R") granting in part and denying in part Plaintiffs' renewed motion for attorney's fees. The R&R specifically recommended the district court grant Plaintiffs $623,785.25 in attorney's fees and $638.00 in costs and deny all other relief requested. Notably, the R&R recommended reducing the Plaintiffs' overall fees by 15% ($114,187.20) to reflect Plaintiffs' unsuccessful challenges to the district court's "no willfulness" and "good faith" findings.[3]

Shortly thereafter, the district court entered an order "accept[ing] and adopt[ing] the report and recommendation filed in this case for substantially the reasons stated therein." The district court order overruled Perry's objections to the Magistrate Judge's R&R on the ground that "the objections d[id] not raise issues that were not adequately addressed in the R&R." Finally, the district court granted Plaintiffs an award of $623,785.25 in fees and $638.00 in costs, pursuant to the Magistrate Judge's determination in the R&R. Perry's timely filed its notice of appeal on April 13, 2021.

---

(apparently) correct spreadsheet was then filed twice, and it is also a 144-page tiny-font spreadsheet with minimal detail []. It includes the time entries of 34 employees who worked on the case—attorneys, paralegals, and other support—undivided by name or job title []. Within the massive document, the person responsible for a particular entry is often identified only by a partial name or initials, making ascertaining who performed a task and what role that person placed very hard."

[3] The R&R notes: "The parties have very different views of the case, and of what an appropriate award of attorney's fees should be." While Plaintiffs suggest that "the case included nearly 350 plaintiffs, and raised a number of complex logistical and other issues, requiring a great deal of work," Perry's "views the case as much less complex, and claims that the primary legal work in the case was accomplished in the related . . . litigation."

II.

"We review the district court's award of attorney's fees for abuse of discretion and its factual findings for clear error." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (quoting *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)); *see also League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997); *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir. 1990).[4] More specifically, the district court's lodestar analysis is reviewed for abuse of discretion, "only to determine if the court sufficiently considered the appropriate criteria." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (emphasis omitted).

"Due to the district court's superior knowledge of the facts and the desire to avoid appellate review of factual matters, the district court has broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Nevertheless, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Kellstrom*, 50 F.3d at 329 (quotation omitted).

III.

Under the Fair Labor Standards Act, the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the

---

[4] Plaintiffs suggest that the proper standard of review to apply on appeal is the "clear error" standard. Plaintiffs urges us not to apply an "abuse of discretion" standard because "Perry's sole complaint on appeal is that the district court erred in determining the reasonable number of hours in the lodestar calculation," and "'[t]his Court reviews the initial determination of reasonable hours and rates for clear error.'" Perry's suggests—rightfully—that the proper standard of review in this matter is "a hybrid legal approach," in which "the clearly erroneous standard specifically applies to factual determinations" and "the District Court's overall determination is reviewed . . . for an abuse of discretion . . . .". *See Saizan*, 448 F.3d at 799–800.

action." 29 U.S.C. § 216(b); *see also Saizan*, 448 F.3d at 799 & n.7. When awarding attorney's fees, the court generally begins by calculating the lodestar. *See Watkins*, 7 F.3d at 457. "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232 (citing *Hensley*, 461 U.S. at 434). The lodestar is intended to reflect a reasonable attorney's fee award, but a district court "may adjust it upward or downward in exceptional cases." *LULAC*, 119 F.3d at 1232. Indeed, the Supreme Court has explained "that the calculation of the lodestar does not end the inquiry and that other considerations may persuade the district court to increase or decrease a fee award." *Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987) (citing *Hensley*, 461 U.S. at 434).

After calculating the lodestar, the court may enhance or reduce the amount based on the relative weight of twelve factors set forth by this court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[5] "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Previously, we have stated that if there is "some assurance that the court has arrived at a just compensation based upon appropriate standards," "it will not always be necessary for a district court to address each of the twelve [*Johnson*] factors

---

[5] The twelve *Johnson* factors are as follows: (1) "the time and labor required"; (2) "the novelty and difficulty of the [legal] questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or the circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Johnson*, 488 F.2d at 717-19.

in explaining the considerations affecting its decision." *Davis v. Fletcher,* 598 F.2d 469, 471 (5th Cir. 1979).[6]

In the present litigation, the Magistrate Judge's accurately R&R recounted the steps a court must follow when calculating attorney's fees. However, the Magistrate Judge decided to "take [his] own path in determining the appropriate fees to award in this case,"[7] asserting that "'a court need not explicitly calculate the lodestar to make a reasonable award' and it has the discretion to instead reduce fees by an across-the-board percentage when attorney's fees are only due for a portion of the litigation."[8] Ultimately, the Magistrate Judge recommended accepting the hours and rates in Plaintiffs' proposed billing schedule as a baseline and then reducing that total by various amounts. Nowhere in the R&R did the Magistrate Judge either calculate a lodestar or apply the *Johnson* factors.

On appeal, Perry's argues that the district court's failure to follow this court's framework for calculating attorney's fees constitutes an abuse of discretion. In response, Plaintiffs try to frame the R&R as providing a "calculation of the lodestar." However, Plaintiffs' description of the R&R includes no reference to a lodestar analysis performed by the court and, indeed, the Magistrate Judge disclaimed making that effort.

"[T]rial courts are considered experts as to the reasonableness of attorney's fees." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546,

---

[6] We have been explicit that "a meaningless exercise in parroting and answering each of *Johnson*'s twelve criteria," is unnecessary when contemplating an attorney's fee award. *Id.* at 470-71.

[7] The Magistrate Judge's R&R repeatedly stressed the difficulty of assessing appropriate fees in this case, due to the "confusing" nature of Plaintiffs' billing records. *See also supra* note 3. Accordingly, the R&R asserts that the court's "essential goal" in determining a fee award is "to do rough justice, not to achieve auditing perfection."

[8] The R&R quotes *Jimenez v. Paw-Paw's Camper City, Inc.*, 2002 WL 257691 at *23 (E.D. La. 2002), but fails to cite *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 501 (5th Cir. 2001).

562 (5th Cir. 2004). Accordingly, while an award of fees under the FLSA is nondiscretionary, the "district court has discretion to determine what is reasonable." *Steele*, 826 F.3d at 249. Furthermore, while "the district court must utilize the *Johnson* factors . . . , we are not required to reverse summarily a district court finding which omits discussion of one of the *Johnson* factors so long as the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis." *Cobb*, 818 F.2d at 1232.

Nonetheless, our cases have established that the lodestar calculation is "[t]he linchpin of the reasonable fee." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). We have previously ordered a limited remand when a lower court "did not discuss the appropriate loadstar [sic] amount" in its fee award, explaining that we had "no way of discerning from the district court's order how the specific award of fees was reached." *Lee v. Coahoma Cty.*, 937 F.2d 220, 228 (5th Cir. 1991), *amended*, 986 F.2d 100 (5th Cir. 1993). Though we acknowledged that "the amount the district court awarded may ultimately prove to be . . . appropriate," we concluded that the order was "simply too vague to permit review." *Id.* We have also vacated and remanded a fee award where the district court provided "no legally justifiable reason" for altering a lodestar fee. *Moore v. U.S.D.A.*, 110 F.3d 794 (5th Cir. 1997) (unpublished). As we stated in *Riley v. City of Jackson*, "[i]f the *Johnson* factors are not evaluated and explained by the district court with a reasonable degree of specificity in making its fee award determination, the case will be remanded, if necessary, for an explanation to facilitate appellate review." 99 F.3d 757, 760 (5th Cir. 1996); *see also Migis*, 135 F.3d at 1047-48 (reversing and remanding a district court's award of attorney's fees because the lower court "did not give adequate consideration" to one of the *Johnson* factors).[9]

---

[9] *Cf. In re Cahill*, 428 F.3d 536, 541 (5th Cir. 2005) (holding that "the bankruptcy court did not abuse its discretion by using the precalculated lodestar amount . . . because it properly applied the . . . *Johnson* factors to the specific facts of the case, setting forth a

Other federal courts of appeals have similarly emphasized the significance of the lodestar calculation in awarding attorney's fees. The Eleventh Circuit has stated that a "court's order on attorney's fees must allow meaningful review" by "articulat[ing] the decisions it made, giv[ing] principled reasons for those decisions, and show[ing] its calculation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) (reversing a district court's award of attorney's fees).  The Eighth, Ninth, and Tenth Circuits have all also reversed fee orders in which the lower court did not adequately calculate or consider the lodestar amount. *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 857-58 (8th Cir. 2021) ("Because the record contains no lodestar calculation, we vacate the award of attorneys' fees."); *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) ("Under a fee-shifting statute, the court must calculate awards for attorneys' fees using the 'lodestar' method.") (internal quotation marks omitted);[10] *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 576 F. App'x 759, 766 (10th Cir. 2014) (recognizing that "[a] request for attorney's fees should not result in a second major litigation" but remanding a fee order because "[t]he district court did not calculate a lodestar or provide any analysis concerning the amount of the attorney's fees to be awarded") (first alteration in original).

In this case, the R&R did not follow the proper framework for calculating attorney's fees. Although the R&R details the reasons for various adjustments to the fee award, it misses a critical first step by failing to explain why it simply adopts the proposed fee award from Plaintiffs' Application as a baseline.  Indeed, the R&R does not simply ignore the court's obligation to engage in lodestar analysis but rather openly disclaims it.  Further, while the

---

reasoned analysis and providing reasons why the lodestar amount did not need to be adjusted").

[10] *See also Cruz v. Alhambra Sch. Dist.,* 282 F. App'x 578, 581 (9th Cir. 2008); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

Magistrate Judge may have alluded to the *Johnson* factors throughout the R&R to justify decreasing Plaintiffs' fee award in response to objections raised by Perry's, the R&R does not use the *Johnson* factors to evaluate the fee award, or describe or discuss the application of *Johnson* in a manner that would facilitate meaningful appellate review. *See Harkless v. Sweeny Indep. Sch. Dist., Sweeny, Tex.*, 608 F.2d 594, 596 (5th Cir. 1979) ("The purpose of the requirement that the trial court articulate its analysis of the Johnson factors is to insure meaningful appellate review of [its] discretion.").

Because the Magistrate Judge's R&R fails to either engage in a loadstar analysis or apply the *Johnson* factors in a way that facilitates meaningful review, the district court abused its discretion by adopting the R&R in its fee order.

## IV.

For the foregoing reasons, the district court's order is VACATED, and we REMAND the case for recalculation of the fee award using the proper methodology.