Marian ROBERTSON, Paula Ace, Betty L. Anderson, Clinton Coffin, Jeff Littlefield, Bruce E. Snelson, Vince Talty, Timothy W. Willert, Mary Ann Wooldridge, Travis Hodge, Vicki Nida, Scott Mellinger, Janis Mayhan, and Tracy Robinson Plaintiffs,

v.

The BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MORGAN, Defendant.

Civil Action No. 96–B–629.

United States District Court, D. Colorado.

Dec. 9, 1999.

1144

Jeffrey Menter, Littleton, CO, Jennifer Bisset, The Law Firm of Jennifer Bisset, Denver, CO, for plaintiffs.

George N. Monsson, County Attorney, Fort Morgan, CO, Pamela Skelton, Ritsema & Lyon, P.C., Denver, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA) action, Plaintiffs have filed two partial summary judgment motions pursuant to Fed.R.Civ. P. 56 concerning claims two, three, and five. Defendant Board of County Commissioners of the County of Morgan (the Board) files for summary judgment as to all five of Plaintiffs' FLSA claims. I construe Defendant's motion as a cross-summary judgment motion as to claims two, three, and five. Oral argument would not materially assist in the determination of these motions. After consideration of the motions and responses, I deny Plaintiffs' partial summary judgment motions and grant in part and deny in part Defendant's motion.

### I.

The following facts are undisputed. Plaintiff Mary Ann Wooldridge worked in the Morgan County Communications Center as a dispatcher. The other Plaintiffs are current or former deputy sheriffs employed in the Morgan County Sheriff's Office as patrol officers, investigators, or jail officers. According to Plaintiffs, from approximately March 15, 1993 to the present,

Defendant has not, pursuant to the FLSA, paid them properly for: 1) overtime; 2) compensatory time; 3) on call and waiting time; and 4) preliminary and postliminary shift time.

Gale Davey was Sheriff of Morgan County from January 1987 to January 1995. He was succeeded by Richard Jackson who served as Sheriff from January 1995 to January 1999. Currently, James Crone is the Morgan County Sheriff.

The following claims and motions are pending:

| Claim No. | Claim | Pending SJ Motions | SJ Cross–Motions | Grant/Deny SJ Motions |
|---|---|---|---|---|
| One | Violation of FLSA, 29 U.S.C. § 207(a)(1) Over-time pay | Defendant | None | GRANT |
| Two | Violation of FLSA, 29 U.S.C. § 207(k) No bona fide 28–day work period | Plaintiffs | Defendant | DENY both motions |
| Three | Violation of FLSA, 29 U.S.C. § 207(o) Compensatory time | Plaintiffs (2) | Defendant | DENY all motions |
| Four | Violation of FLSA, 29 U.S.C. § 207 On call and waiting time | Defendant - on - call time only | None | GRANT as to on-call time except as to Plaintiff Willert |
| Five | Violation of FLSA, 29 U.S.C. § 207 Pre- and post-shift time | Plaintiff | Defendant | DENY both motions |

## II.

### SUMMARY JUDGMENT STANDARD

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed. R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, in-terrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is

whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White,* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997).

### III.

As an initial matter, as part of its summary judgment motion, Defendant seeks judgment as a matter of law on all claims because: 1) the FLSA is unconstitutional as applied to the Board; and 2) with the exception of Plaintiff Wooldridge, the Board is not the Plaintiffs' employer. I deny the motion on these grounds.

### A. Constitutionality of the FLSA, 29 § 201, *et seq.*

According to Defendant, pursuant to *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), section 207 of the FLSA is unconstitutional as applied to it because: 1) the FLSA does not contain any jurisdictional component to allow constitutional application to Defendant; and 2) the congressional findings and legislative history concerning the FLSA are insufficient to establish a consti-

tutional nexus between local law enforcement and interstate commerce. *See id.* I disagree.

#### 1. FLSA History

With the passage of the FLSA in 1938, Congress established a "comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." *Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1149 (10th Cir.1992). Originally, the states and their political subdivisions were expressly exempted from the FLSA. 52 Stat. 1060, 29 U.S.C. § 203(d) (1940). In 1966, Congress extended the FLSA's coverage to certain school, hospital, nursing home, and transit employees of state and local governments under the Fair Labor Standards Amendments of 1966. 80 Stat. 830–32, 29 U.S.C. § 203(d) (1966). The Supreme Court upheld the extension in *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), stating that Congress acted within its power under the Commerce Clause. In 1974, Congress extended FLSA's reach to virtually all state and local government employees. *Id.* at 197–98, 88 S.Ct. 2017; FLSA Amendments of 1974, 29 U.S.C. § 203(d) and (x). In 1976, however, the Supreme Court overruled *Wirtz* and held that the 1966 and 1974 amendments were unconstitutional because the Commerce Clause does not empower Congress to enforce the FLSA against state and local governments "in areas of traditional governmental functions," including the provision of police protection. *National League of Cities v. Usery,* 426 U.S. 833, 851–52, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

Less than a decade later, the Court turned full circle, stating that *National League of Cities'* "traditional governmental function" test was "unsound in principle and unworkable in practice." *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 546, 105 S.Ct. 1005,

83 L.Ed.2d 1016 (1985). As a result, the FLSA was and continues to be applicable to state and local governments. *See id; Lamon,* 972 F.2d at 1149.

### 2. The Commerce Clause and the Effect of *Lopez*

■ The Commerce Clause provides, in relevant part, that Congress shall have the power "[t]o regulate Commerce . . . among the several States . . . ," U.S. Const. art. I, § 8, cl. 3, and "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers. . . ." Art. 1, § 8, cl. 18. Under the Commerce Clause, Congress has the authority to regulate three types of activities: (1) the use of channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) activities that substantially affect interstate commerce. *See Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624.

■ The Commerce Clause has been employed by Congress to promulgate wideranging types of legislation. The Supreme Court stated that, "the Commerce Clause is a grant of plenary authority to Congress. This power is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution." *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 276, 101 S.Ct. 2389, 69 L.Ed.2d 1 (1981). Legislation enacted pursuant to Commerce Clause authority is upheld by the federal courts if there is any "rational basis" for the statute:

> The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding. This established, the only remaining question for judicial inquiry is whether the means chosen by [Congress] is reasonably adapted to the end permitted by the Constitution. . . . Thus, when Congress has determined that an activity affects interstate commerce, the courts need in-

quire only whether the finding is rational.

*Id.*

The Tenth Circuit reaffirms this deferential standard and states that a court in this circuit may invalidate Commerce Clause legislation "only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." *United States v. Hampshire,* 95 F.3d 999, 1001 (10th Cir.1996); *cert. denied, Hampshire v. United States,* 519 U.S. 1084, 117 S.Ct. 753, 136 L.Ed.2d 690 (1997). Based in part on this deference, federal jurisprudence generally reflects that statutes enacted under the Commerce Clause are found constitutional. Although providing a minimum standard of living is certainly one purpose of the Act, another equally important purpose is to eliminate unfair competition between employers and between workers seeking employment. 29 U.S.C. § 202(a)(3). *Hale v. State of Arizona,* 967 F.2d 1356, 1363 (9th Cir.1992).

■ In *Lopez,* the Supreme Court struck down 18 U.S.C. § 922(q)(1)(A), the Gun–Free School Zones Act of 1990, as an unconstitutional exercise of Congress' authority under the Commerce Clause. This statute made possession of a firearm in a school zone a federal crime. The *Lopez* Court ruled that Congress' authority under the Commerce Clause extended to only three types of activities: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) those activities that substantially affect interstate commerce. "Because § 922 did not involve channels or instrumentalities of interstate commerce, the Court reasoned, the statute would be constitutional only if it regulated an activity which substantially affected interstate commerce." *United States v. Boyd,* 149 F.3d 1062 (10th Cir.1998) (analyzing *Lopez* ). The Supreme Court concluded that § 922 did not meet this requirement, hold-

ing that the statute had "nothing to do with commerce or any sort of economic enterprise." *Lopez,* 514 U.S. at 560, 115 S.Ct. 1624. The Court refused to "pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567–68, 115 S.Ct. 1624. The Court concluded that the Gun–Free School Zones Act "neither dealt with commerce on its face nor was the subject of any congressional findings supporting a rational connection to the regulation of interstate commerce." *Id.*

As related to this case, the Board states that *Lopez* reaffirmed that there are, in fact, substantive limits on Congressional actions pursuant to the Commerce Clause and finding, by implication, the procedural limits proposed in *Garcia* to be a "failure." Defense Summary Judgment Motion, p. 14.

It is true that in *Garcia* the Supreme Court was "not require[d] to identify or define what affirmative limits the constitutional structure might impose on federal action affecting the States under the Commerce Clause." *Garcia,* 469 U.S. at 556, 105 S.Ct. 1005. And, indeed, the *Lopez* Court reaffirmed that there are "outer limits" to congressional power under the Commerce Clause. *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624.

In *Lopez,* the Court determined that enactment of the Gun–Free School Zone Act (The Act) exceeded Congressional authority under the Commerce Clause because:

> by its terms, [it] has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms. [The Act] is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be under cut unless the intrastate activity were regulated.... Second, [the Act] contains no jurisdictional element which would ensure through case-by-case inquiry, that the

firearm possession in question affects interstate commerce....

*Id.* at 560–62, 115 S.Ct. 1624. From this language, the Board extrapolates a "required jurisdictional component" to render constitutional, congressional application of the FLSA to it. I am not persuaded.

According to the *Lopez* Court, "Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce." *Id.* at 562, 115 S.Ct. 1624 *citing Katzenbach v. McClung,* 379 U.S. 294, 304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). *See also Perez v. United States,* 402 U.S. 146, 156, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) ("Congress need [not] make particularized findings in order to legislate"). Rather, the *Lopez* Court found that congressional findings would be helpful to allow the Court "to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye." *See Lopez,* 514 U.S. at 563, 115 S.Ct. 1624.

The substantial effect of state and local law enforcement activities on interstate commerce is, in contrast to the Gun–Free School Zone Act, "visible to the naked eye." *Id.* Thus, I cannot conclude, as a matter of law, that there is no reasonable connection between the application of the FLSA to state and local law enforcement agencies and the beneficient goals for which the FLSA was enacted. *See Hampshire,* 95 F.3d at 1001.

Moreover, in asking that I reconsider *Garcia,* Defendant ignores the Supreme Court's repeated warnings concerning the impropriety of preemptively overturning Supreme Court precedent. *E.g., Agostini v. Felton,* 521 U.S. 203, 206, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The Supreme Court's direction has been crystal clear: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leav-

ing to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

In *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court declined to reconsider *Garcia* and enforced the FLSA against a local government agency without addressing the constitutional question. Consistent with *Auer*, in *West v. Anne Arundel County, Maryland*, 137 F.3d 752 (4th Cir.1998), the Fourth Circuit rejected an invitation to revisit *Garcia. Id.* at 760. Most significantly, in affirming a previous Order of this Court in this case, the Tenth Circuit explicitly declined the Board's invitation to revisit *Garcia's* conclusion that the FLSA applies to local government agencies. *See Robertson v. Morgan County, Bd. of County Commr's*, 166 F.3d 1222 (10th Cir.1999).

I thus conclude on the authority of *Garcia* and *Robertson* that the application of the FLSA to the Board presents no constitutional or jurisdictional defect.

## B. Employer Status

According to the Board, it is not liable for the Plaintiffs' FLSA claims because it is not the Plaintiffs' (except for Plaintiff Wooldridge) employer. I disagree.

Plaintiffs hold the initial burden of proving that an employer-employee relationship existed between them and Defendant. *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir.1993) *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Marshall v. Truman Arnold Distributing Co., Inc.*, 640 F.2d 906, 911 (8th Cir.1981). The FLSA uses specific definitions of employer and employee. Consequently, I must decide whether Defendant was an "employer" of the Plaintiffs as defined by the FLSA.

Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer," § 203(e)(1), and, "[i]n the case of an individual employed by a public agency, 'employee' means any 'individual employed by a State, a political subdivision of a State, or an interstate government agency.'" 29 U.S.C. § 203(e)(2)(C). "Employ" is defined under the FLSA as "to suffer or permit to work." *Id.* at 203(g).

█ Courts are to construe the terms "employee" and "employer" expansively. *Baker*, 41 F.Supp.2d at 979 *citing Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *United States v. Rosenwasser*, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945). In addition, the FLSA contemplates that an employee may have more than one employer responsible for its provisions. *Baker v. Stone County, Missouri*, 41 F.Supp.2d 965, 979 (W.D.Mo.1999) *citing Donovan v. Agnew*, 712 F.2d 1509, 1509–10 (1st Cir.1983); *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983). *See also Brickey v. County of Smyth, Virginia*, 944 F.Supp. 1310, 1315 (W.D.Va.1996) *citing Shultz v. Falk*, 439 F.2d 340, 345 (4th Cir.1971); *Mid–Continent Pipe Line Co. v. Hargrave*, 129 F.2d 655 (10th Cir.1942).

To determine whether an employment relationship exists the Supreme Court has indicated that courts should apply an "economic realities" test. *Tony and Susan Alamo Foundation*, 471 U.S. at 301, 105 S.Ct. 1953; *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

█ The Tenth Circuit has not set out a test to determine whether defendants are employers under the FLSA. Several courts faced with this question in the context of deputy sheriffs utilize the following test to determine if an entity is an "employer" under the FLSA:

An employer under the Act is someone who:

1) has the power to hire and fire the employee;

2) supervises and controls the employee's work schedule or conditions of employment;

3) determines the rate and method of payment; and

4) maintains employment records.

*Baker,* 41 F.Supp.2d at 979–80; *see Barfield v. Madison County, Miss.,* 984 F.Supp. 491, 497 (S.D.Miss.1997); *Brickey,* 944 F.Supp. at 1315; *Keenan v. Allan,* 889 F.Supp. 1320, 1381 (E.D.Wash.1995), *aff'd,* 91 F.3d 1275 (9th Cir.1996). No one factor is dispositive, but instead "a court must consider the economic realities and the circumstances of the whole activity." *Brickey,* 944 F.Supp. at 1315. I am persuaded by this authority. Accordingly, I apply these four factors to determine if Defendant is an employer of Plaintiffs.

### 1. Power to hire and fire

The Sheriff of Morgan County has the sole authority to hire and fire deputy sheriffs. *See* § 30–10–506, C.R.S. Thus, this factor indicates that the Board is not the Plaintiffs' employer.

### 2. Supervision and control of the employee's work schedule and conditions of employment

It is undisputed that the Morgan County Sheriff controls, or is ultimately responsible for, the day to day activities and duties of the deputies, jailers, and other Sheriff's Department personnel, including the manner in which the Plaintiffs perform their daily activities and Plaintiffs' work schedule. There is also evidence, however, that the Board sets conditions of employment such as overtime pay and compensatory time policies. *See* Covelli Affidavit, ¶¶ 3 and 4. In addition, the Board influences the scheduling of deputies indirectly by allocating funds to the Sheriff to operate his department. *See Barfield,* 984 F.Supp. at 497 (finding that "although Madison County lacks the power to hire and fire, the County has some control in this area

by allocating funds to the Sheriff to operate his department"). As in *Barfield,* there is evidence that over the years the Sheriffs repeatedly requested authorization from the Board to pay their deputies overtime which was limited or denied. *See* Davey Deposition, pp. 10–11; Jackson Deposition, pp. 23, 25. Such behavior on the part of the Board had an impact on the scheduling of Sheriff's Department employees and the conditions under which they worked. Thus, this factor is indicative of the Board's status as an employer of Plaintiffs.

### 3. Determination of rate and method of payment

Pursuant to § 30–2–106, C.R.S, "[u]ndersheriffs and deputy sheriffs shall be appointed by the sheriffs ... and their salaries shall be paid monthly. In all counties, the salaries of the undersheriff and deputy sheriff shall be fixed by the sheriff, **with the approval of the board of county commissioners.**" *Id.* (emphasis supplied). Pursuant to § 30–2–106, the Board approves finally the rate and frequency of pay. Thus, the Board plays a significant role in setting the Sheriff's Department budget. This factor militates in favor of finding that the Board is an employer of Plaintiffs.

### 4. Employment records

There is evidence that the Board's payroll department maintained the "permanent" and "official" records that were used to calculate pay and compensatory time. *See* Covelli Deposition, pp. 9, 10, 14, 72; Jackson Deposition, pp. 9–12, 27, 28; Snelson Deposition, p. 11. There is no dispute that at times the Sheriff, through his employees, maintained separate records of compensatory time earned and used by the deputies. However, it is also undisputed that the deputies were paid according to the "official" time records submitted to the Morgan County Department of Finance and Accounting. *See* Jackson Deposition, pp. 9–12, 27–28; Snelson Deposition, p. 11,

Covelli Deposition, pp. 51–53, Martin Deposition, pp. 77, 81. Analysis of this factor indicates that the Board is an employer of the Plaintiffs.

When viewed in total, and in light of the courts' "expansive" view of the terms "employee" and "employer," I conclude that the Board is an employer of the Plaintiffs and, thus, a proper defendant with respect to Plaintiffs' FLSA claims. *See Baker*, 41 F.Supp.2d at 979 *citing Darden*, 503 U.S. at 318, 112 S.Ct. 1344.

## IV.

### Summary Judgment Motions

Pending are Plaintiffs' two partial summary judgment motions and Defendant's summary judgment motion, which I construe as a cross-motion. In their February 9, 1999 motion, Plaintiffs seek summary judgment on the liability portions of: 1) claim three for violation of FLSA, 29 U.S.C. § 207(*o*) for an invalid compensatory time plan; and 2) claim five for violation of § 207 in connection with pre-shift briefings. In their September 15, 1999 motion, Plaintiffs move for summary judgment on: 3) claim two for violation of FLSA 29 U.S.C. § 207((k) for failure to establish a *bona fide* 28–day work period; and 4) claim three for violation of § 207(*o*) concerning payment for compensatory time.

### A. FLSA

The central provisions of the FLSA are its minimum wage and overtime requirements. *Lamon*, 972 F.2d at 1150. FLSA's principal provision compelling the payment of an overtime wage for hours worked above a maximum hour threshold is § 207(a):

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment

> in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Although a state or local government, in its employment of law enforcement or fire protection personnel, may choose to conform to the maximum hour and overtime provisions contained in § 207(a)(1), the governmental entity may adopt an alternative scheme available under § 207(k). In enacting the FLSA Amendments of 1974, "Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement." *Id., citing Wethington v. City of Montgomery*, 935 F.2d 222, 224 (11th Cir.1991); § 207(k). Offering an alternative method to calculate hourly and overtime pay, § 207(k) provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if—

> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days ...; or

> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of

paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). Pursuant to 29 C.F.R. § 553.230, the Secretary of Labor has established that 171 hours is the maximum number of hours a law enforcement officer may work in a work period of 28 days before the officer must be paid an overtime wage. Accordingly, in a 28–day period, § 207(k) permits a law enforcement employer to pay its police officers a regular wage for the first 171 hours worked, but then compels an overtime wage for work in excess of 171 hours. *See, e.g. Lamon*, 972 F.2d at 1150. The number of hours at the regular and overtime wage rates for periods of fewer than 28 days would be calculated applying the same proportion, as explained in 29 C.F.R. § 553.230. *Id.; see also Lee v. Coahoma County, Miss.*, 937 F.2d 220, 224 (5th Cir. 1991).

As for compensatory time, § 207(*o*) provides:

**(*o*) Compensatory time**

(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under paragraph (1) only—

(A) pursuant to—

(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and

(B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).

(3)(A) If the work of an employee for which compensatory time may be provided included work in a public safety activity, an emergency response activity, or a seasonal activity, the employee engaged in such work may accrue not more than 480 hours of compensatory time for hours worked after April 15, 1986. If such work was any other work, the employee engaged in such work may accrue not more than 240 hours of compensatory time for hours worked after April 15, 1986. Any such employee who, after April 15, 1986, has accrued 480 or 240 hours, as the case may be, of compensatory time off shall, for additional overtime hours of work, be paid overtime compensation.

(B) If compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment.

(4) An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time at a rate of compensation not less than—

(A) the average regular rate received by such employee during the last 3 years of the employee's employment, or

(B) the final-regular rate received by such employee, whichever is higher.

(5) An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency—

(A) who has accrued compensatory time off authorized to be provided under paragraph (1), and

(B) who has requested the use of such compensatory time,

shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

29 U.S.C. § 207(*o*).

### B. Plaintiffs' February 9, 1999 Partial Summary Judgment Motion

#### 1. Claim three for violation of FLSA, 29 U.S.C. § 207(*o*) for an allegedly invalid compensatory time plan

 Plaintiffs contend that because there was no explicit agreement and they were never told that they had the option to preserve, use, or cash out compensatory time, there was no valid compensatory time plan pursuant to § 207(*o*). *See* Ace Affidavit, ¶¶ 3–6; Martin Affidavit, ¶¶ 3–6; Robertson Affidavit, ¶¶ 3–7.

In response, Defendant submits an August 31, 1995 memorandum concerning "Overtime Compensation" from Sergeant Dave Martin of the Morgan County Sheriff's Office addressed to "all Patrol, Investigations, Detention Officers" providing, in pertinent part:

> The County Commissioners have agreed to compensate all nonexempt sheriff's office employees (Deputies, Sergeants, Investigators) for overtime in excess of 160 hours in a 28 day period.
>
> Sheryl Groves David Martin
> Curtis Deal Kevin Kuretich
> R. Jon Kaper Tim Willert
> Don Wood Bruce Snelson
> Marcellino Pena

Marian Robertson has filed a written request choosing not to be paid for comp time. Defense Exhibit D (emphasis added).

Further, in 1995, the Board of County Commissioners wrote a memorandum to the Morgan County Sheriff's Department

Under the United States Supreme Court's Decision (*sic)* in Garcia v. San Antonio Metropolitan Transit Authority, the commissioners do not have to provide any compensation for overtime for law enforcement until it is in excess of 171 hours in a 28 day work period.

> The agreement as I understand it is; (*sic)* The Commissioners, will pay money at straight time (what ever your hourly wage figures to) for anything in excess of 160 hours in the 28 day period; up to 171 hours. **At the 172nd hour they will give time and one half comp-time.**
>
> In order to receive overtime pay or comp-time the 160 hours must be actual hours work. (*sic* ). The hours *CAN NOT* be comprised of sick time, holiday time, comp-time or vacation.
>
> Because the Commissioners have agreed to pay money for a portion of the overtime it is very important that it does not become abused. This money will be drawn from what ever divisions budget you work for.
>
> Overtime should be kept to a minimum and is still at the approval of your supervisor.

Def. Ex. C. (bold emphasis added).

Defendant points also to a January 21, 1992 memorandum from Sheriff Davey stating:

> The following list of staff has chosen **to be paid for their 1991 approved comp time:**

titled "Sheriff's Dept. overtime" in which the Board stated:

> In review of the policy regarding overtime in the Sheriff's Department we are in agreement that we will change the existing policy.

Salary is to be based on the 28 day period with 160 hours. If more than 160 hours and up to 171 hours are physically worked then we will *pay* in addition to salary straight time up to 171 hours. **Anything over the 171 hours will accrue as comp time and a half.**

There will be no pay for being on call. Court time will be paid with regular salary. Overtime policy applies, if over 160 hours—straight pay, if over 171 hours—**comp time at time and a half.** This is effective beginning with salary paid in September 1995.

Defense Exhibit E. (underline emphasis in original; bold emphasis added).

### a) Explicit agreement

Plaintiffs' § 207(*o*) claim appears to be premised in part on the belief that any § 207(*o*) agreement must be written and signed by the employees. Nothing in § 207(*o*), however, requires a written agreement, much less a signed agreement. Indeed, as stated in § 207(*o*)(2), a "regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation shall constitute an agreement or understanding under [subsection] (A)(ii)." Nor do the FLSA's implementing regulations require a written agreement, signed by the employee. Section 553.23(c) provides specifically that any agreement to accept compensatory time off need not be in writing. Also, "[a]n agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes to section 7(*o*) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay." 29 C.F.R. § 553.23(c)(1).

Under these circumstances, I conclude there is a genuine dispute whether there existed a valid compensatory time agreement pursuant to § 207(*o*). Thus, neither Plaintiffs nor Defendant are entitled to summary judgment on claim three. *See*

*James Barlow Family Ltd. Partnership,* 124 F.3d at 1323.

### 2. Claim five for violation of § 207 in connection with pre-shift briefings.

■ Stating that "[t]here is no question that patrol officers came in 15 minutes early for pre-shift briefings," Partial Summary Judgment Motion, p. 7, ¶ 20, Plaintiffs seek summary judgment as to claim five for violation of § 207 concerning payment for pre-shift briefings.

"Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace.... Such time includes all **pre-shift** and post-shift activities, which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity...." 20 C.F.R. § 553.221(b)(emphasis added).

It is undisputed that under the FLSA, "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required." § 207(*o*)(1). Thus, Defendant has the option of providing compensatory time rather the overtime pay when overtime compensation is due. However, overtime compensation is due only upon establishment of work beyond 171 hours in a 28 day period. *See* § 207(k)(1).

Plaintiffs present evidence that attendance at 15-minute pre-shift briefings was mandatory for officers and that they were not paid for this time. Sheriff Davey Deposition, p. 19; Padilla Deposition, pp. 4–5, 36–37. However, there is evidence that Sgt. Martin and Sgt. Padilla were instructed by Michelle Covelli, Morgan County's finance director, that all officers were to record pre-shift briefings on their time sheets. Sheriff Davey Deposition, p. 19. Sheriff Davey testified also that he told the officers to put the pre-shift briefing time on their time sheets so that they would be given comp time. *Id.*

Thus, it appears that if Plaintiffs worked the pre-shift briefings and documented that information on their time records, they may be entitled to overtime compensation. However, Plaintiffs have not submitted individual time records or other documentation delineating their individual entitlement to compensatory time that allegedly they did not receive. Also, there is some evidence that Defendants knew that employees were performing pre-shift briefing work.

At this stage of the case, therefore, it is unclear whether, based on all documents submitted, the reasonable trier of fact could find by a preponderance of the evidence that Plaintiffs are entitled to prevail. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. Therefore, I deny the parties' motions for summary judgment on claim five.

## C. Plaintiffs' September 15, 1999 Motion for Partial Summary Judgment -Second and Third Claims

Stating that there is additional evidence supporting summary judgment concerning compensatory time, Plaintiffs move anew for summary judgment on claim three. Further, Plaintiffs seek summary judgment on claim two for Defendant's alleged failure to establish a *bona fide* 28–day work period under 29 U.S.C. § 207(k).

### 1. Claim two-Failure to establish a *bona fide* 28–day work period under § 207(k)

Plaintiffs contend it is undisputed that Defendant did not establish a *bona fide* 28–day work period, C/O ¶¶ 16–17, 20–21, and, thus, they are entitled to summary judgment on claim two. I disagree.

Section 207(k) was enacted to more appropriately calculate overtime for individuals engaged in fire protection, law enforcement and corrections activities, whose work schedules may be more irregular than those of other employees. *See B.N. Spradling v. City of Tulsa, Oklahoma*, 95 F.3d 1492, 1504 (10th Cir.1996). Pursuant to § 207(k), a public agency is permitted to establish work periods of 28 consecutive days during which the employee does not receive overtime until s/he works more than 171 hours. *See* § 207(k). Accordingly, if a *bona fide* work period is properly established, § 207(k) permits a law enforcement employer to pay its police officers a regular wage for the first 171 hours worked. *See Lamon*, 972 F.2d at 1150.

A public sector employer bears the burden of establishing that it qualifies for a § 207(k) exemption. *Id. citing Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir.1996). To qualify for the exemption, the employer must establish that the employees in question have a work period of at least seven, but not more than twenty-eight, consecutive days. *Spradling*, 95 F.3d at 1505; *see Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1343 (11th Cir.1994). This is normally a question of fact, *Spradling*, 95 F.3d at 1504–05 *citing Barefield*, 81 F.3d at 710, governed by a preponderance of evidence standard. *Lamon*, 972 F.2d at 1154.

"The 'establishment' of a[207](k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days." *Spradling*, 95 F.3d at 1505 *quoting McGrath v. City of Philadelphia*, 864 F.Supp. 466, 476 (E.D.Pa.1994) *citing Lamon*, 972 F.2d at 1154. "Alternatively, a public employer may establish a[207](k) work period **even without making a public declaration**, as long as its employees actually work a regularly recurring cycle of between 7 and 28 days." *Spradling*, 95 F.3d at 1505 (emphasis added), *citing Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 806 (11th Cir.1992). *Accord Milner v. Hazelwood*, 165 F.3d 1222,1223 (8th Cir. 1999).

In support of their argument that Defendant has not adopted a 28–day work period, Plaintiffs rely on provisions contained in the Morgan County Personnel Manual, effective May 4, 1993, stating:

"Employees who work in excess of a 40 hour week are compensated for overtime in compliance with the Fair Labor Standards Act of 1938 and subject to the exemptions of the Act.... [E]very County employee is required to work forty (40) hours per week...."

Plaintiffs' Exhibit 1, p. 30. In response, Defendant relies on the August 11, 1995 memorandum from Sgt. Martin to the deputies containing statements concerning compensation for "overtime in excess of 160 hours in a **28 day period**...; [and] straight time ... for anything in excess of 160 hours in the **28 day period**; up to 171 hours." *See* Defense Exhibit C. Moreover, on September 5, 1995, the Board stated in a memorandum to the Sheriff's Department that "[s]alary is to be based **on the 28 day period with 160 hours**...." Defense Exhibit E.

In January 1, 1997, the County changed its Personnel Manual and made reference to a 28 day work period:

Employees (other than law enforcement) who work in excess of a 40 hour work week (work in excess of 171 hours in a 28 day period for law enforcement personnel) are compensated for overtime by overtime pay or compensatory time in compliance with the Fair Labor Standards Act of 1938 and not subject to the exemptions of the Act. Whether overtime pay is awarded or compensatory time is credited to an employee is at the discretion of the County. In order to be eligible for overtime, an employee must obtain authorization from either the department head or elected official who supervises the employee's work....

Every County employee is required to work forty (40) hours per week unless classified part-time....

Plaintiffs' Exhibit 2, p. 2. Plaintiffs state that the policy's reference to both a 28 day work period and a "40 hours per week" period is ambiguous. Even if the Defendant continued to use 40 hour work week time sheets or paid the Plaintiffs more than once every 28 eight days, there is no violation of the FLSA, as a matter of law. As the Tenth Circuit stated in *Lamon:*

this court is unaware of any authority supporting the contention that an employer, once having elected the subsection (k) option, must structure pay periods to be co-extensive with the chosen work period and may pay overtime only for hours worked beyond the legal maximum permitted at the regular wage. Indeed, this contention flies in the face of the federal regulations promulgated under FLSA. Section 553.224 defines "work period" as used in subsection (k):

a) As used in section 7(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, **cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period** .... The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.

*Lamon,* 972 F.2d at 1151–52; *see also* 29 C.F.R. § 553.224(a). This provision explicitly allows pay periods to vary from work periods. Thus, in this case, there is conflicting evidence whether: 1) the Defendant properly elected the 207(k) option; and 2) if so, when. This is, necessarily, a factual inquiry concerning a material issue. Thus, I may not grant Plaintiff or Defendant summary judgment on claim two. *See James Barlow Family Ltd. Partnership,* 124 F.3d at 1323.

### 2. Claim three-violation of the FLSA compensatory time provisions, § 207(*o*)

In its second partial summary judgment motion on claim three, Plaintiffs state that the Sheriff's Department violated § 207(*o*) by maintaining an "in-house" or "detention" comp system under which they were

not provided compensatory time off at the rate of time and one-half of overtime hours worked.

It is undisputed that for an undetermined period of time, the Sheriff's Department maintained compensatory time records, known interchangeably as "in-house comp time" or "detention comp time," separate and apart from the compensatory time records compiled by the County payroll department based on time records submitted to the County. *See e.g.*, Plaintiffs' Exhibit 3 ("1997 Morgan County Detention Comp Time Records"); Plaintiffs' Exhibit 4 ("Morgan County Sheriff's Department Patrol Division 1994 In–House Comp Time, Sick Time Holiday Time, Court Time & Vacation"); Martin Deposition, pp. 78–80. According to Sgt. Padilla, "in-house" or "detention" comp records were kept in detention from approximately September 1989 until January 1999. Apparently, any hours "over eight hours in a day [were] kept as comp time [and hours] over 40 hours in a week [were] kept as detention comp." Padilla Deposition, pp. 5–6. In addition, the County recorded compensatory time know as "payroll comp" which was "anything within the 28–day period that was over 171 hours which showed up on the paychecks." *Id.* at p. 6.

According to Sgt. Padilla, he has no knowledge that the detention comp time and payroll comp time records were ever merged or reconciled. *Id.* at 16. Sgt. Padilla testified that employees were never compensated for the detention comp time remaining on the in-house records at the time they left the Sheriff's Department. *Id.* at 13. Sgt. Padilla testified further that over the years, he supplied the in-house comp time records to persons at Morgan County payroll but the records were not acknowledged. *Id.* at pp. 6, 10. After the County changed its policy in August 1995 and began paying straight time for hours worked between 160 and 171 hours, *see* Defense Exhibit C, Sgt. Padilla testified that financial officer Covelli told him that he "didn't need to submit the sheets anymore...." *Id.* at p. 12. Sgt. Padilla stated also that in the early 1990's,

he discussed the in-house comp time issue with the county commissioners. *Id.* at 21–22. In response to Plaintiffs' motion, Defendant presents evidence that Plaintiffs were informed that they were to write down all hours worked and were instructed to submit accurate time records to the County. Defense Exhibits A, B, F.

■ If an employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of alleged overtime work, the employer's failure to credit that overtime is not a violation of the FLSA. *See Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981)(employee turned in time sheets which did not include overtime hours and the employee did not demonstrate that the employer should have known that the employee worked more hours than those claimed on his time sheets).

■ Here, there is conflicting evidence whether and to what extent: 1) Defendant knew of the in-house compensatory time records; and 2) Plaintiffs failed to claim all hours worked on their time sheets. These factual issues must be resolved at trial. Thus, I deny Plaintiffs and Defendant summary judgment on claim three. *See James Barlow Family Ltd. Partnership*, 124 F.3d at 1323.

V.

### Defendant's Summary Judgment Motion on Claims One and Four

Having determined that Defendant's summary judgment motion must be denied as to claims two, three, and five, I examine Defendant's motion concerning claim one for violation of § 207(a)(1) for overtime pay and claim four for violation of § 207 as to on-call and waiting time.

## A. Claim one for overtime pay § 207(a)(1)

In claim one, Plaintiffs allege that they "worked as employees for Defendant without being paid at least the regular rate for all hours up to 40 hours each week and one and one-half time their hourly rate for hours in excess of forty (40)per week." C/O ¶ 9.

Plaintiffs do not provide a clear explanation for the basis of this claim. However, I accept Defendant's unrebutted interpretation of this claim to be based on one of two theories: 1) that Plaintiffs who were subject to the provisions of 207(k) were not paid prior to the summer of 1995 for time worked in the "gap;" or 2) because Plaintiffs turned in weekly time sheets, they should have been considered subject to § 207(a)(2) rather than § 207(k), requiring overtime to be compensated at the rate of hours worked over 40 hours in a 7-day period, rather than at the rate of hours worked over 171 hours in a 28-day period. *See* Defendant's Summary Judgment Motion, p. 19.

### 1. "Gap time"

■ "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit of 171 hours worked in a 28-day period and, when actual hours worked are divided into the salary, the regular rate does not fall below the minimum wage requirements of the FLSA. *See Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir.1986) ("[N]o violation [of the FLSA's minimum wage requirements] occurs 'so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.)'" *quoting United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 490 (2d Cir.1960).

Here, Plaintiffs' salaries were intended to compensate them for all hours worked up to 171 in a 28-day period. That is, prior to mid-1995 when straight time was instituted for hours worked "in the gap," Plaintiffs were paid a salary and their salary was the same whether they worked 160 hours or as many as 171 hours in a 28-day period. As a matter of law, there is no requirement that an employer reimburse employees for "gap" time. *See, e.g. Lamon,* 972 F.2d at 1152. *See also Local 889, American Federation of State, County, Municipal Employees, Council 17 v. Louisiana Department of Health & Hospitals,* 145 F.3d 280, 284 (5th Cir.1998)("The State is not to be punished for doing more than the statute requires"). *Accord Martin v. Coventry Fire Dist.,* 981 F.2d 1358, 1361–62 (1st Cir.1992), *declined to follow on other grounds, Chessin v. Keystone Resort Mgmt., Inc.,* 184 F.3d 1188, 1195 (10th Cir.1999). Hence, Defendant's practice of not paying for "gap time" cannot be considered a violation of the FLSA.

### 2. Variance between time sheet periods and pay periods

■ Variance of the period for computation of overtime from the weekly time sheet period does not destroy application of § 207(k) to Plaintiffs. Section 553.224(a), C.F.R., Title 29, defines "work period" as used in 207(k):

> (a) As used in section [207](k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. **Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period** ... The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.

29 C.F.R. § 553.224(a) (emphasis added).

As the Tenth Circuit has stated, "[§ 553.224] explicitly allows pay periods

to vary from work periods and makes no mention of a requirement that overtime wage rates be paid only for hours exceeding 171 in a work period." *Lamon,* 972 F.2d at 1152.

Based on the foregoing, and in light of Plaintiffs' failure to supply any evidence to support claim one, I will grant Defendant's motion for summary judgment on claim one.

### B. Claim four for on-call time pursuant to § 207

Defendant seeks summary judgment on Plaintiffs' claim four for on-call time pursuant to § 207. Plaintiffs state that the Board "did not properly calculate 'on call' hours and 'waiting time' and did not properly pay employees for that time, in violation of 29 U.S.C. § 207." Third Amended Complaint ¶ 26.

Under § 207(a)(1), a plaintiff must also show that he was employed by the defendant employer in order to prove a violation. As defined in 29 U.S.C. § 203(9), "employ" includes they phrase "suffer or permit to work." The words "suffer" and "permit" as used in § 203(9) have been interpreted to mean work performed with the knowledge of the employer. *See Davis v. Food Lion,* 792 F.2d 1274, (4th Cir. 1986), *citing inter alia, Fox v. Summit King Mines,* 143 F.2d 926, 932 (9th Cir. 1944). To satisfy this requirement, courts have uniformly held that a plaintiff must show, as an element of his case, that his employer knew or should have known of his overtime work. *Food Lion,* 792 F.2d at 1276; *Forrester,* 646 F.2d at 414; *Summit King Mines Ltd.,* 143 F.2d at 932; *Neal v. Braughton,* 111 F.Supp. 775, 782 (W.D.Ark.1953).

■ "An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge ... of

alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." *Forrester,* 646 F.2d at 414. *See also Newton v. City of Henderson,* 47 F.3d 746, 748–49 (5th Cir. 1995); *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972). Plaintiffs have not produced any evidence demonstrating that the Board knew the Plaintiffs were required to be "on call" or that, assuming such knowledge, the requirements for "on call" were so restrictive as to convert that time to work time. *Compare Renfro v. City of Emporia,* 948 F.2d 1529, 1531–32 (10th Cir.1991), *cert. dismissed,* 503 U.S. 915, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992)(holding that on-call time is compensable because firefighters averaged four to five call backs per day, had to respond within 20 minutes, had great difficulty arranging shift trades, and were disciplined if they were late or failed to respond to a callback) *with Gilligan v. City of Emporia, Kan.,* 986 F.2d 410, 411–13 (10th Cir.1993) (holding that on-call time is not compensable when employees were called back less than once a day, had 30 minutes to respond, and were free to pursue personal activities with little interference).

Here, although all Plaintiffs join in the fourth claim alleging that they should be compensated for on-call time, the only evidence submitted in support of claim four is Plaintiff Willert's affidavit. Thus, with the exception of Plaintiff Willert, Plaintiffs have failed to meet their burden to oppose Defendant's summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. (The non-moving party has the burden of showing that there are issues of material fact to be determined).

■ As to Plaintiff Willert, he states in his affidavit that he: 1) was assigned call duty, Willert Affidavit, ¶ 3; 2) from October 1990 to March 1997, was required to be on call for two hours prior to his regular shift, *id.;* 3) averaged two calls per week, while "on-call;" *id.* at ¶ 4; and 4)

was never paid for the time worked. Rather, he was compensated with comp time only, *id.* at ¶ 5, was required to remain in the County while "on-call," and had to be available by phone or pager. *Id.* at ¶ 6.

This affidavit is sufficient to raise a genuine factual dispute whether Plaintiff Willert was entitled to on-call time pursuant to § 207(a). There is, however, a failure of proof as to the remaining Plaintiffs. Hence, Defendant is entitled to summary judgment on claim four as to all Plaintiffs with the exception of Plaintiff Willert.

## VI.

### Further Issues

Defendant seeks a determination that Plaintiffs are entitled to a two-year limitation of action rather than a three-year time period because any FLSA violation on its part was not "willful." For the following reasons, this question must be resolved at trial.

### A. Willfulness

Pursuant to 29 U.S.C. § 255(a):

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended

(a) may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

*Id.*

■ The standard for willful violations is whether the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The Plaintiffs bear the burden of proving

that the Defendant willfully violated the FLSA. *Id.* at 135, 108 S.Ct. 1677.

■ Here, there is evidence that the employer's personnel policy called for employees to round their time worked to the nearest one-quarter hour. This policy shows that the employer thought employees should be paid for each 15 minutes of work. There was a directive from the Sheriff s staff not to record pre-shift time and to report only 40 hours per week, even if there was overtime. The Finance Director testified that she knew pre-shift activity was compensable, yet there is evidence that the County did not pay pre-shift time worked. On the other hand, Defendant submits evidence that Plaintiffs did not record all of their time worked on the payroll records submitted to the County. Under these circumstances, at this summary judgment stage, I am unable to determine willfulness, as a matter of law.

### B. Liquidated Damages

Plaintiffs are seeking liquidated damages pursuant to 29 U.S.C. § 216(b) for any violations of the FLSA. Section 216(b) provides that "[a]n employer, including a public agency, that violates the FLSA is ordinarily liable for both unpaid wages and an additional equal amount as liquidated damages." *Id.; See also Doty v. Elias,* 733 F.2d 720, 725 (10th Cir.1984).

Defendant argues that an award of liquidated damages against a public entity constitutes an unconstitutional penalty, citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). "Punitive damages are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Id.* at 266, 101 S.Ct. 2748. In *City of Newport,* the Supreme Court rejected the application of punitive damages against a municipality. However, that case concerned a claim brought pursuant to the Civil Rights Act of 1871, not the FLSA.

■ "In contrast, liquidated damages under the FLSA are 'not a penalty or punishment,' but rather serve as compensation to an aggrieved employee for losses that [may be] too obscure and difficult of proof for estimate other than by liquidated damages." *Overnight Motor Transp. Co., Inc., v. Missel,* 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1540 (10th Cir.1991).

■ Under section 216(b), a court is required to award liquidated damages in addition to actual damages for violations of the FLSA. " 'The only instance where a court may exercise discretion in not awarding liquidated damages is when an employer shows that its action was in good faith and that it had reasonable grounds for believing the failure to pay overtime compensation was not a violation of the FLSA.' " *Lamon v. City of Shawnee, Kan.,* 754 F.Supp. 1518, 1521 (D.Kan.1991) *quoting Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1351 (10th Cir.1986), *aff'd in pertinent part, Lamon,* 972 F.2d at 1159.

■ The employer has the burden of showing both that it acted in good faith and that it had reasonable grounds for believing that its actions did not violate the Act. *Renfro,* 948 F.2d at 1540; *Lamon,* 754 F.Supp. at 1521. " 'The employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds ... [i]n [sic] the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages.' " *Renfro,* 948 F.2d at 1540 *quoting Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982).

■ At this juncture, I am unable to make the required findings as to whether Defendant acted in good faith and/or with reasonable grounds to believe its actions complied with the Act. *See Department of Labor v. City of Sapulpa,* 30 F.3d 1285, 1289 (10th Cir.1994). Therefore, the determination of the length of the statute of limitations in this case as well as whether, assuming a violation of FLSA, Defendant acted willfully, must occur at trial.

### VII.

### Conclusion

In summary, the claims remaining for trial are as follows:

1. Claim two for violation of FLSA, 29 U.S.C. § 207(k)—*bona fide* 28–day work period;

2. Claim three for violation of FLSA, 29 U.S.C. § 207(*o*) -compensatory time;

3. Claim four for violation of FLSA, 29 U.S.C. § 207 on-call time as to Plaintiff Willert only and waiting time as to all Plaintiffs; and

4. Claim five for violation of FLSA, 29 U.S.C. § 207—pre- and post-shift time.

In addition, the length of the applicable statute of limitations and the determination of the willfulness of any FLSA violations by Defendant must be determined at trial.

**ACCORDINGLY, IT IS ORDERED THAT:**

1. Defendant's motion for summary judgment based on unconstitutionality of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* as applied, is DENIED;

2. Defendant's motion for summary judgment based on Defendant's status as Plaintiffs' employer is DENIED;

3. Defendant's motion for summary judgment as to claim one for violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) as to overtime pay is GRANTED;

4. Plaintiffs' motion for partial summary judgment and Defendant's cross-motion for summary judgment as to claim two for violation of FLSA, 29 U.S.C. § 207(k) concerning a *bona fide* 28–day work period are DENIED;

5. Plaintiffs' motions for partial summary judgment and Defendant's cross-mo-

tion for summary judgment as to claim three for violation of FLSA, 29 U.S.C. § 207(*o*) concerning compensatory time are DENIED.

Further, IT IS ORDERED that:

6. Defendant's motion for summary judgment as to claim four for violation of FLSA, 29 U.S.C. § 207(*o*) concerning on-call time is DENIED as to Plaintiff Timothy W. Willert. The motion is GRANTED as to the remaining Plaintiffs;

7. Plaintiffs' motion for partial summary judgment and Defendant's cross-motion for summary judgment as to claim five for violation of FLSA, 29 U.S.C. § 207 concerning pre-shift time is DENIED.